## UNLAWFUL SALE OF SKIMMED MILK.

[Circuit Court of Lucas County.]

ALBERT S. GUILDER v. THE STATE OF OHIO.

Decided, January 25, 1904.

*Milk—Dairymen not Exempt—From Statute Prescribing that Skimmed Milk—Can be Sold Only from Plainly Marked Cans—Meaning of the Word "Dealers"—Application of Police Regulations.*

1. Police regulations are not to be interpreted as are revenue laws, which admit of favored classes, but must be applied with the purpose of preventing all persons from doing the thing prohibited.
2. The word "dealer", therefore, as used in Section 4200-11, relating to the sale of skimmed milk, includes one who sells milk obtained from his own cows, as well as one who buys and sells milk.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This is a proceeding in error brought to obtain a reversal of a judgment of conviction of the plaintiff in error in the police court of this city because of the violation of a certain provision of the dairy and food laws of the state. The judgment of the police court was afterwards affirmed by the court of common pleas. The plaintiff in error seeks to reverse both judgments.

The section under which the plaintiff in error was prosecuted is 4200-11, being Section 3 of an act found in Vol. 86, Ohio Laws, at page 229. It reads:

"No dealer in milk, and no servant or agent of such dealer, shall sell, exchange, or deliver, or have in his custody or possession, with intent to sell, exchange or deliver, milk from which the cream or part thereof has been removed, unless in a conspicuous place, above the center upon the outside of every vessel, can or package from which or in which such milk is sold, the words "skimmed milk" are distinctly marked in uncondensed gothic letters not less than one inch in length. Whoever violates the provisions of this section shall be punished by the penalties provided in Section 1."

The penalty provided in Section 1 is, for the first offense, a fine of not less than fifty dollars nor more than two hundred dol-

lars. This appears to have been the first offense charged against the plaintiff in error.

It appeared upon the trial of the case in the police court that the plaintiff in error was the owner of a dairy, and that all the milk which he had was the product of his own dairy; that no part of the milk which he was engaged in selling had been obtained, by purchase or otherwise, from others, and it was there contended on behalf of Guilder, and is contended here, that he does not come within the class of persons who are prohibited from carrying milk for sale unless they have the packages marked as prescribed by this section; that is to say, that he was not a "dealer" in milk, because he was not engaged in buying and selling milk— he was selling the product of his own dairy. Counsel for plaintiff in error has furnished us with a brief in which he cites a number of cases where the word "dealer" is defined, and in all those cases the "dealer" is described and defined as one who makes a business of buying and selling, as a middleman between the producer and consumer of the article. We are cited to Vol. 5 of The American & English Encyclopoedia of Law, at pages 122-123, First Edition, where in the text it is said, under the heading of "Deal" and Dealer", that it is "To trade; to buy and sell for the purpose of gain; to traffic; to have to do with." "A dealer is therefore one who makes a business of buying and selling; he is the middleman between the producer and consumer of a commodity." A large number of cases are cited in support of this definition. Most of them are cited in the brief of counsel for the plaintiff in error. Among the cases cited are *Norris Bros.* v. *Commonwealth*, 27 Pa. St., 494; *Commonwealth* v. *Campbell*, 33 Pa. St., 385; and in the case of *Barton* v. *Morris*, 10 Philadelphia (Penn.), 360, it is said:

"A farmer who sells the product of his farm, and occasionally that of his neighbors, at a market-stand in a city, is not a dealer. He does not buy, but only sells."

*Ex Parte Herbert*, 2 Vesey & Beames' Repts., 399, and *Overall* v. *Bezean*, 37 Mich., 506, are also cited.

It is urged by counsel for plaintiff in error that the word "dealer" is, therefore, a word that has a fixed legal meaning

and that it must be presumed that the Legislature, in the enactment of this statute, used the word in the sense defined in these cases, and that since the plaintiff in error does not come within the class described in the statute, the conviction was wrong and should be set aside. Attention is called to the fact that in the statutes generally, respecting the adulteration of foods, and in other sections of the same statute, the terms used to designate the persons who shall be amenable to the penalty and who are subject to the prohibition, is general, *i. e.,* "whoever" does this or that; "any person" who does this or that; while in this particular section there is a *class* described, to-wit, "dealers."

On behalf of the prosecution we are not furnished with any authorities, and, indeed, no one has appeared before us to present the case; and, not having made a very thorough search for authorities ourselves, we are unable to say what may or may not be produced in the way of authority in opposition to the cases cited. The cases cited, however, in the brief of counsel for the plaintiff in error, and all that we have examined, are cases where the revenue laws of the state were under consideration; laws taxing dealers, or laws requiring them to procure a license before trafficking in certain products; and the holdings are in harmony with the general governmental policy, apparently a well settled policy, manifested in many statutes as well as in the decisions of courts, to exempt farmers and other producers selling their own products, or the raw material, and sometimes even exempting a manufacturer selling his products where the manufacture is from the raw materials, and especially those raised or produced by the manufacturer. A great many examples of this policy may be found in the statutes of our own state. I call attention to Section 1653, paragraph 14. This section confers certain powers upon hamlets, and paragraph 14 provides that they shall have power to regulate peddlers. Section 2672-19, provides for the licensing of peddlers in certain cities—I believe the section applies to Cincinnati—and contains this provision:

"Provided, that any person selling agricultural produce of his own raising shall not be liable for license for selling, hawking or

peddling the same in any mode or manner in the markets, public streets or alleys of said city."

Section 2669, which grants power to councils of municipalities generally to grant licenses, contains this provision:

"But nothing in this section shall be construed to authorize any municipal corporation to require of the owner of any product of his own raising, or the manufacturer of any article manufactured by him, license to vend or sell in any way, by himself or agent, any such article or product."

And 4401 of the Revised Statutes, which is in the chapter respecting dealers and peddlers, provides for licenses and for penalties for selling without license, and provides that:

"If any person vend or sell in this state, as a peddler or a traveling merchant, any goods, wares, or merchandise, except such goods, wares and merchandise as are manufactured within this state by himself, or employer, without having first obtained a peddler's license so to do, he shall forfeit and pay," etc.

Another instance of this is found in the Dow Law, beginning with Section 4364-9 and running through and including 4464-23. This law lays a tax on the business of trafficking in intoxicating liquors, but defines the phrase "trafficking in intoxicating liquor" to mean the "buying or procuring and selling of intoxicating liquors otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known mechanical, pharmaceutical or sacrimental purposes, but such phrase does not include the manufacture of intoxicating liquors from the raw material, and the sale thereof at the manufactory, by the manufacturer of the same in quantities of one gallon or more at any one time." It is somewhat significant that the Legislature deemed it necessary to limit the word "trafficking" so that it should not include certain sales by the manufacturer, but by the plainest implication has made it include even sales by the manufacturer, unless the liquor shall be manufactured from a certain class of material and the sales shall be made at a certain place and sold in certain quantities.

In the act respecting skimmed milk, involved here, the noun "dealer" of which the connate verb is "dealer" and the participial form is "dealing", a word set down by lexicographers as synonymous with "trafficking", when applied to transactions like that under consideration, there is no such limitation of its scope. In other words, in the use of the synonym "trafficking" the Legislature deemed it necessary to expressly exclude what it seems to have thought it would otherwise cover, to-wit, certain dealing or trafficking that would not have been included at all if the theory of counsel for plaintiff in error here is correct, *i. e.,* it has used the word "trafficking" as including sales by one who does not buy, unless such sales are of goods manufactured from raw materials and are made at a certain place and in certain quantities.

But, in looking to the mischief to be remedied by this statute governing the selling of skimmed milk we find that the evident purpose was to prevent frauds upon purchasers and consumers of milk, a staple article of diet, a food that is in universal use, and in respect to which frauds by adulteration and by dilution or subtraction, are very easily practiced and are insidious, and oftentimes dangerous in their results; and bearing in mind that many, if not most persons who make a business of selling milk sell from their own dairies—obtain their supplies from the milk of their own cows—we can not believe that it was the purpose of the Legislature to permit the sale of skimmed milk with impunity by this class while imposing a heavy penalty for the same act upon those who might buy their milk for sale. The fraud is as flagrant and the mischief as great in the one case as in the other. The moral turpitude is as great in the one case as in the other. We can think of no valid reason for exempting the one class from the prohibition and penalties of the act and including the other, and therefore we can not suppose that the Legislature intended to make such a distinction. In the cases cited—and the only cases we have examined—no such police regulation, designed to save the health and lives of people and to prevent the perpetration of such frauds was under consideration, but they dealt with quite a different class of laws, where, as I have said, the purpose seemed to have been

to prefer and favor the producer—not to bring him within the purview of acts imposing penalties for making sales of impure articles. In other words, the purpose of the law in each one of the cases cited was to raise a revenue and the policy of the law seems to have been to not require the contribution of revenue from those who sell their own products.

We hold that the word "dealer" in Section 4200-11 includes one who sells milk obtained from his own cows as well as one who buys and sells milk, and therefore the judgments of the lower courts will be affirmed.

*Ritchie, Murphy & Phelan,* for plaintiff in error.

*W. G. Ulery,* Prosecuting Attorney, for defendant in error.